1
2
3
4
5
6            **UNITED STATES DISTRICT COURT**
7               **DISTRICT OF NEVADA**
8
9 KENNETH PATTON,
10       Petitioner,               Case No. 2:12-cv-01437-JCM-GWF
11 vs.                        **ORDER**
12 STATE OF NEVADA, *et al.*,
13       Respondents.
14

15        This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254
16
by a Nevada state prisoner.  This matter comes before the court on the merits of the remaining
17
grounds of the amended petition.
18
**I.  Procedural History**
19
       On May 21, 2008, the state filed an amended criminal complaint which charged petitioner
20
with the following five counts: first degree kidnapping resulting in substantial bodily harm,
21
attempted murder, battery constituting domestic violence with substantial bodily harm, assault with
22
a deadly weapon, and robbery with the use of a deadly weapon.  (Exhibit 1).[1]  On May 21, 2008,
23
after a preliminary hearing, the justice court bound petitioner over on all five counts except
24
attempted murder.  (Exhibits 1 & 2).
25
26
27
28
       [1]  The exhibits referenced in this order are found in the court's record at ECF Nos. 11-13.

1       The state filed an information on May 22, 2008.  (Exhibit 3).  At his arraignment on May 29,

2   2008, petitioner pled not guilty and invoked the 60-day rule.  (Exhibit 4).  The court set calendar call

3   for August 27, 2008, and trial for September 2, 2008.  (*Id.*).

4       On June 18, 2008, petitioner filed a motion to dismiss appointed counsel Geller and appoint

5   new counsel because petitioner claimed that Geller failed to communicate with him or visit him at

6   the Clark County Detention Center (CCDC), and failed to investigate any defense in mitigation of

7   his sentence.  (Exhibit 5).  On June 30, 2008, the court denied petitioner's motion.  (Exhibit 6).

8       On July 18, 2008, petitioner filed a pretrial petition for a writ of habeas corpus in the state

9   district court, arguing that the kidnapping charge should be dismissed because the victim's

10  confinement was incidental to the battery resulting in substantial bodily harm.  (Exhibit 7).  The

11  state filed a return to the petition.  (Exhibit 9).  On August 20, 2008, the state district court denied

12  the petition.  (Exhibit 10).

13      On October 23, 2008, petitioner filed another motion to dismiss counsel Geller and appoint

14  new counsel, which was identical to the June 18, 2008 motion.  (Exhibit 11).  On November 5,

15  2008, the court denied the motion.  Petitioner then requested to represent himself.  The court set a

16  *Faretta* hearing for November 12, 2008.  (Exhibit 12).  On November 12, 2008, the court granted

17  petitioner's motion to represent himself and appointed the public defender as stand-by counsel.

18  (Exhibit 13).

19      On November 17, 2008, petitioner filed a motion for discovery and all favorable evidence.

20  (Exhibit 14).  On November 21, 2008, petitioner filed a motion for a continuance of the September

21  2, 2008 trial date to February 2009.  (Exhibits 15).  At the calendar call on November 26, 2008, the

22  court granted petitioner's motion for discovery and for a continuance, and also granted the state's

23  motion to amend the information.  (Exhibit 16).  Trial was re-scheduled for February 23, 2009.

24  (*Id.*).  The amended information was filed on November 26, 2008.  (Exhibit 17).

25      On December 8, 2008, petitioner filed another motion to dismiss support-counsel and to

26  appoint alternate counsel.  (Exhibit 18).  Petitioner alleged that Geller failed to visit him at CCDC,

27  failed to provide complete discovery including a transcript of a 911 call from May 1, 2008, failed to

28  maintain attorney/client confidentiality during phone conversations, and failed to direct necessary

investigatory personnel to visit him.  (*Id.*).  At a hearing on the motion, on January 14, 2009,

prosecutor Smith informed the court that he had personally turned over to petitioner all the

discovery he had requested, except for the 911 transcript, which he gave to petitioner in open court.

(Exhibit 19).  Stand-by counsel Geller informed the court that investigator Everett had visited

petitioner; he also informed the court that he had a copy of the entire file.  (*Id.*).  The court granted

the motion and appointed counsel Frank Kocka as counsel (not stand-by counsel).  (*Id.*).  The court

continued the February 23, 2009 trial and set a status check hearing.  (*Id.*).  At status check hearings

on January 21 and 26, 2009, the court set trial for April 20, 2009.  (Exhibits 20 & 21).

On March 12, 2009, petitioner filed a motion to dismiss his counsel and appoint alternate

counsel.  (Exhibit 22).  At a hearing on March 30, 2009, petitioner withdrew the motion.  Attorney

Kocka advised the court that he had reviewed all discovery with petitioner.  (Exhibit 23).

At the calendar call on April 15, 2009, counsel Kocka requested compliance with a subpoena

to obtain records which may have shown that petitioner had an alibi.  (Exhibit 24).  Counsel Kocka

also requested a continuance.  (*Id.*).  The court ordered the records to be produced and granted

counsel's motion for a continuance.  (*Id.*).  Trial was re-set for June 22, 2009.  (*Id.*).

On April 16, 2009, the state filed a motion to conduct a video-taped deposition of Dr.

Richard Schwartz, who had treated the victim and who would be out of the country at the time of

trial.  (Exhibit 25).  Petitioner's counsel had no opposition to the motion, and the court granted the

motion.  (Exhibit 26).  The parties later agreed to call off Dr. Schwartz's deposition, as a different

doctor would testify at trial.  (Exhibit 27).

On June 22, 2009, the jury trial began; four days later the jury found petitioner guilty of first-

degree kidnapping, battery constituting domestic violence with substantial bodily harm, robbery,

and misdemeanor assault.  (Exhibits 28, 29, 30, 31, 32 & 33).

At the sentencing hearing on August 10, 2009, the court sentenced petitioner to 5 years to

life on the first-degree kidnapping, a consecutive 12-36 months on the battery constituting domestic

violence with substantial bodily harm, 26-120 months on the robbery, to run concurrently with the

kidnapping sentence, and time served on the assault, with 462 days credit for time served.  (Exhibit

34).  On August 14, 2009, the judgment of conviction was filed.  (Exhibit 35).

Petitioner filed a notice of appeal on August 18, 2009.  (Exhibit 36).  Appellant's opening brief, filed by counsel Gamage, was filed on March 29, 2010.  (Exhibit 37).  On April 8, 2010, the state filed its answering brief.  (Exhibit 38).  On July 15, 2010, the Nevada Supreme Court filed its order affirming the convictions.  (Exhibit 39).  Remittitur issued on August 10, 2010.  (Exhibit 40).

On October 5, 2010, petitioner filed a motion for the production of documents, papers, pleadings, and tangible property of defendant.  (Exhibit 41).  On October 20, 2010, the court granted petitioner's motion.  (Exhibit 42).  The court also granted petitioner's motion to withdraw counsel Gamage.  (*Id.*).

On December 1, 2010, petitioner filed a motion for discovery which alleged that he didn't receive discovery.  (Exhibit 43).  The state filed an opposition.  (Exhibit 44).  On December 15, 2010, the court granted the motion in part and directed prior counsel Kocka to provide petitioner with the items not previously provided.  (Exhibit 45).

On December 27, 2010, petitioner filed another motion for discovery which described additional documents that he had not received.  (Exhibit 46).  On January 12, 2011, the court granted the motion in part and directed prior counsel Gamage to provide the documents to petitioner.  (Exhibit 47).

On April 11, 2011, petitioner filed a post-conviction habeas petition and an accompanying memorandum in the state district court.  (Exhibits 48 & 49).  On August 12, 2011, the state filed an opposition to the post-conviction habeas petition.  (Exhibit 50).  The state district court held a hearing on the petition on October 24, 2011, at which the court denied the petition.  (Exhibit 51).  On December 22, 2011, the state district court filed findings of fact, conclusions of law, and order denying the petition, except as to ground 10, concerning a clerical error in the judgment of conviction.  (Exhibit 53).  The state district court filed an amended judgment of conviction which corrected the "first degree kidnapping resulting in substantial bodily harm" language in the original judgment of conviction to state "first degree kidnapping."  (Exhibit 54; Exhibit 34).  Petitioner appealed the denial of the post-conviction habeas petition.  (Exhibit 52).

On February 21, 2012, while the appeal from the denial of the post-conviction habeas petition was pending, petitioner filed a motion for transcripts at state expense in state district court.

-4-

1   (Exhibit 55).  On March 7, 2012, the state district court heard the matter and denied the motion.

2   (Exhibit 58).  The court's written order denying the motion was filed on March 28, 2012.  (Exhibit

3   59).  Petitioner appealed.  (Exhibit 60).  By order filed May 17, 2012, the Nevada Supreme Court

4   dismissed the appeal for lack of jurisdiction.  (Exhibit 61).

5        On July 25, 2012, petitioner filed a motion for an enlargement of time to file a petition

6   for rehearing of his post-conviction habeas petition.  (Exhibit 63).  The state district court denied the

7   motion at a hearing on August 6, 2012.  (Exhibit 65).  The state district court filed a written order

8   denying the motion on August 20, 2012.  (Exhibit 66).

9        On October 8, 2012, the Nevada Supreme Court issued its order affirming the district court's

10  denial of the post-conviction habeas petition.  (Exhibit 67).  Remittitur issued on November 2, 2012.

11  (Exhibit 68).

12       On August 8, 2012, petitioner dispatched his original federal habeas petition to this court.

13  (ECF No. 1-1).  By order filed January 31, 2013, the court ordered the original petition to be filed by

14  the clerk and directed a response to the petition.  (ECF No. 6).  The petition was filed on that date.

15  (ECF No. 7).  Respondents filed a motion to dismiss on March 18, 2013.  (ECF No. 9).  On April

16  15, 2013, petitioner filed a motion to amend the petition, along with a proposed amended petition.

17  (ECF Nos. 18 & 18-1).  Respondents did not oppose the motion.  (ECF No. 20).  On April 30, 2013,

18  the court granted petitioner's motion to file an amended petition and denied respondents' motion to

19  dismiss without prejudice.  (ECF No. 21).  The amended federal petition was filed at ECF No. 22.

20  Petitioner's amended federal petition contains ten grounds which are identical to the ten grounds

21  petitioner raised in his post-conviction habeas petition and memorandum filed in state district court.

22  (*Compare* ECF No. 22 *to* Exhibit 49).

23       Respondents filed a motion to dismiss the amended federal petition.  (ECF No. 23).  By

24  order filed March 14, 2014, the court granted respondents' motion in part.  (ECF No. 34).

25  Specifically, the court ruled as follows: (1) the entirety of ground 1 was dismissed as procedurally

26  barred; (2) the portion of ground 3 which claims that "the court misled the jury by saying all three

27  knives came from the same place" was dismissed as procedurally barred, but the remaining claims

28  of ineffective assistance of counsel were not procedurally barred; (3) the due process, equal

protection, confrontation clause, and fair trial claims within ground 4 were dismissed as

procedurally defaulted, however, the claims of ineffective assistance of counsel were not

procedurally barred; (4) the fair trial and due process claims within ground 7 were dismissed as

procedurally barred, however, the claims of ineffective assistance of counsel were not procedurally

barred; (5) ground 8 was dismissed for failure to state a cognizable claim for federal habeas corpus

relief; and (6) ground 10 was dismissed as moot.  (ECF No. 34).  The court ruled that this action

shall proceed on the following grounds of the amended petition: (1) ground 2, in its entirety; (2) the

ineffective assistance of counsel claims raised in ground 3; (3) the ineffective assistance of counsel

claims raised in ground 4; (4) ground 5, in its entirety; (5) ground 6, in its entirety; (6) the

ineffective assistance of counsel claims raised in ground 7; and (7) ground 9, in its entirety.  (*Id.*).

Respondents were ordered to file an answer addressing the merits of the surviving grounds of the

amended petition.  (*Id.*).  Respondents filed an answer on April 14, 2014.  (ECF No. 36).  Petitioner

filed a reply on June 24, 2014.  (ECF No. 43).

**II. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

decision is contrary to clearly established Supreme Court precedent, within the meaning of 28

U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the

1   Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

2   indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

3   different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003)

4   (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685,

5   694 (2002)).  The formidable standard set forth in section 2254(d) reflects the view that habeas

6   corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a

7   substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03

8   (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

9        A state court decision is an unreasonable application of clearly established Supreme Court

10   precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

11   governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

12   principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

13   529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

14   than merely incorrect or erroneous; the state court's application of clearly established federal law

15   must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).  In determining whether

16   a state court decision is contrary to, or an unreasonable application of federal law, this Court looks

17   to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

18   *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

19        In a federal habeas proceeding, "a determination of a factual issue made by a State court

20   shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

21   presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  If a claim

22   has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the

23   burden set in § 2254(d) and (e) on the record that was before the state court.  *Cullen v. Pinholster*,

24   563 U.S. 170, 185 (2011).

25   **III. Discussion**

26        **A.  Ineffective Assistance of Counsel Standard**

27        Ineffective assistance of counsel claims are governed by the two-part test announced in

28   *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

1   petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1)

2   counsel's performance was unreasonably deficient, and (2) that the deficient performance prejudiced

3   the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).

4   To establish ineffectiveness, the defendant must show that counsel's representation fell below an

5   objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there

6   is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

7   would have been different. *Id.* A reasonable probability is "probability sufficient to undermine

8   confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be

9   "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

10  order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's

11  burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

12  *Id.*

13      Ineffective assistance of counsel under *Strickland* requires a showing of deficient

14  performance of counsel resulting in prejudice, "with performance being measured against an

15  'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

16  *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an

17  ineffective assistance claim, a federal habeas court may only grant relief if that decision was

18  contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,*

19  540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide

20  range of reasonable professional assistance. *Id.*

21      The United States Supreme Court has described federal review of a state supreme court's

22  decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v.*

23  *Pinholster*, 563 U.S. 86, 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct.

24  1411, 1413 (2009)). In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a

25  'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'"

26  *Id.* (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of

27  counsel claim is limited to the record before the state court that adjudicated the claim on the merits.

28  *Cullen v. Pinholster*, 563 U.S. at 185. The United States Supreme Court has specifically reaffirmed

-8-

the extensive deference owed to a state court's decision regarding claims of ineffective assistance of

counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at 1420.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  556 U.S. at ___, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under  § 2254(d).  When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "A court considering a claim of ineffective

assistance of counsel must apply a 'strong presumption' that counsel's representation was within the

'wide range' of reasonable professional assistance."  *Id.* at 104 (quoting *Strickland*, 466 U.S. at

689).  "The question is whether an attorney's representation amounted to incompetence under

prevailing professional norms, not whether it deviated from best practices or most common

custom."  *Id.* (internal quotations and citations omitted).

The *Strickland* standard also applies to claims of ineffective appellate counsel.  *Smith v.

Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has no constitutional duty to raise every non-

frivolous issue requested by the client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  To state a

claim of ineffective assistance of appellate counsel, a petitioner must demonstrate: (1) that counsel's

performance was deficient in that it fell below an objective standard of reasonableness, and (2) that

the resulting prejudice was such that the omitted issue would have a reasonable probability of

success on appeal.  *Id.*  "Experienced advocates since time beyond memory have emphasized the

importance of winnowing out weaker arguments on appeal and focusing on one central issue if

possible, or at most on a few key issues."  *Id.* at 751-52.  Petitioner must show that his counsel

unreasonably failed to discover and file nonfrivolous issues.  *Delgado v. Lewis*, 223 F.3d 976, 980

(9th Cir. 2000).  It is inappropriate to focus on what could have been done rather than focusing on

1   the reasonableness of what counsel did.  *Williams v. Woodford*, 384 F.3d 567. 616 (9th Cir. 2004)

2   (citation omitted).

3       **B.  Ground 2**

4       Petitioner alleges that counsel was ineffective for failing to challenge the kidnapping charges

5   at trial and failing to file a motion to dismiss.  (ECF No. 22, at pp. 15-16).  The Nevada Supreme

6   Court considered and rejected this claim, as follows:

7           First, appellant claimed that trial counsel failed to challenge the
            constitutionality of the kidnapping statute and whether he received
8           proper notice of the State's theory that the kidnapping count was not
            incidental to the battery and robbery counts.  Appellant failed to
9           demonstrate that his trial counsel's performance was deficient or that
            he was prejudiced.  Trial counsel filed a pretrial petition for a writ of
10          habeas corpus, arguing that the kidnapping count was incidental to the
            battery count.  Trial counsel further sought a motion to dismiss and
11          motion for advisory verdict.  This court considered and rejected
            appellant's challenge to the kidnapping count on direct appeal.  Patton
12          v. State, Docket No. 54364 (Order of Affirmance, July 15, 2010).
            Appellant's argument relating to whether kidnapping is incidental to
13          battery and robbery does not implicate the constitutionality of NRS
            200.310, and appellant failed to otherwise demonstrate that NRS
14          200.310 was unconstitutional.  Nothing requires the State to set forth
            its theory regarding whether a kidnapping charge is incidental to
15          another charged offense in the criminal information.  NRS 173.075.
            Appellant failed to demonstrate that any further arguments regarding
16          the kidnapping count would have had a reasonable probability of
            altering the outcome at trial.

17
    (Exhibit 67, at p. 2).
18
        Petitioner further alleges that counsel was ineffective because he did not fully investigate or
19
    cross-examine the victim about her allegations that she was held to the floor by fear of being
20
    stabbed and failed to fully investigate and cross-examine her about the inconsistencies between her
21
    testimony at trial and her testimony at the preliminary hearing, her statements to police, and medical
22
    reports.  (ECF No. 22, at pp. 16-17).  The Nevada Supreme Court rejected petitioner's claims, as
23
    follows:
24
            Second, appellant claimed that trial counsel failed to conduct a more
25          thorough investigation.  Appellant claimed that trial counsel failed to
            visit him before trial to talk about the case.  Appellant specifically
26          identified the following points that were not adequately pursued: the
            victim's testimony about the chronology of the incident, the medical
27          reports, and the neighbor's statements to the police.  Appellant failed
            to demonstrate that his trial counsel's performance was deficient or
28          that he was prejudiced.  Appellant failed to demonstrate how further

                                            -10-

> investigation regarding any of these points would have had a reasonable probability of altering the outcome of trial. [Footnote 3: To the extent that appellant claimed that trial counsel failed to adequately cross-examine the victim about these points, appellant failed to demonstrate that raising these points on cross-examination would have had a reasonable probability of altering the outcome at trial.].

(Exhibit 67, at p. 3).  The state court's factual findings, as found within the Nevada Supreme Court's decisions discussed above, are presumed correct.  28 U.S.C. § 2254(e)(1).  As to each ineffective assistance of counsel claim within ground 2, petitioner has failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced under *Strickland*.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's rulings were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the rulings were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The court denies habeas relief as to ground 2 in its entirety.

**C.  Ground 3**

Petitioner alleges that counsel was ineffective because he failed to prepare a defense for trial. Petitioner alleges that his counsel: (a) never came to talk with him about a defense until three days before trial; (b) did not call an expert witness (a doctor) who could have testified that when someone gets hit in the face sometimes it takes hours or even a day for swelling to occur; (c) failed to cross-examine doctors and police officers to establish that the victim injured herself; (d) failed to cross-examine the police officers about how they could have gone upstairs to the condo when the victim never went back upstairs into the condo, medical personnel and the ambulance never came, and the victim arrived in the hospital in a private vehicle; (e) failed to argue that the victim did not go to the hospital until 24 hours after the incident which indicates that her injuries were not life-threatening; (f) failed to object to the doctor's claims on direct appeal; (g) failed to interview witnesses; (h) failed to adequately review and investigate the case; and (i) failed to object to the admission of the knives.  (ECF No. 22, at pp. 19-21).  The Nevada Supreme Court rejected these claims, as follows:

> Third, appellant claimed that trial counsel failed to prepare a defense for trial.  Appellant claimed that trial counsel failed to hire an expert witness to testify about the length of time it would take for swelling to occur and failed to investigate and/or present appellant's self-defense

argument and argument that the victim waited 24 hours to report the crime.  Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced.  Appellant failed to demonstrate that any testimony regarding swelling-times would have had a reasonable probability of altering the outcome at trial.  Trial counsel did present a self-defense argument and argued that the battery occurred 24 hours prior to the victim's reporting of the crime. It was for the jury to determine the weight and credibility of the evidence and testimony presented at trial.  Bolden v. State, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).  Therefore, we conclude that the district court did not err in denying this claim.

Fourth, appellant claimed that trial counsel failed to question the doctors and police about whether the victim inflicted her own injuries, the victim's statement that she returned to her upstairs residence, and whether an ambulance took the victim to the hospital when appellant believed that a private vehicle was used.  Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced.  At trial, the police officers who first responded to the report of domestic violence testified that they found the victim on the couch in her upstairs unit, battered and bloody. [Footnote 4: One of the officers testified that it was the worst presentation of any battery injuries that he had ever seen on a victim who was alive.].  The medical testimony, including the stipulation, was that the victim suffered a nasal fracture, facial fractures, a bilateral brain bleed, which was testified to be life-threatening, and vision loss, and that the victim reported abdominal pain.  While the testimony was slightly ambiguous about her mode of transport to the hospital, any testimony on this point would not have related to any material fact at issue. Appellant failed to demonstrate that questions regarding any of these points would have had a reasonable probability of altering the outcome of trial.

Fifth, appellant claimed that trial counsel failed to interview witnesses in order to prepare a series of questions for use at trial.  Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced.  Appellant failed to identify the witnesses or the questions to be asked.  Thus, he necessarily failed to demonstrate that there was a reasonable probability of a different outcome had trial counsel taken further action.

Sixth, appellant claimed that trial counsel failed to object to inadmissible testimony about the knives.  Appellant claimed that the victim lied about appellant brandishing knives and that it was the victim who brandished a knife.  Appellant failed to demonstrate that trial counsel's performance was deficient or that he was prejudiced. The fact that the victim's story differed from appellant's story did not render testimony about the knives inadmissible.  The jury was presented with appellant's story that the victim attacked him with a knife and with the fact that a knife was found in the victim's purse in the hospital.  It was for the jury to determine the weight and credibility of the evidence and testimony presented.  See Bolden, 97 Nev. at 73, 624 P.2d at 20. [Footnote 5: To the extent that appellant claimed that trial counsel failed to cross-examine the victim about the knives, the record belies appellant's claim.].

-12-

1    (Exhibit 67, at pp. 3-5).  The state court's factual findings are presumed correct.  28 U.S.C. §

2    2254(e)(1).  As to each ineffective assistance of counsel claim within ground 3, petitioner has failed

3    to demonstrate that his trial counsel's performance was deficient or that he was prejudiced under

4    *Strickland*.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

5    rulings were contrary to, or involved an unreasonable application of, clearly established federal law,

6    as determined by the United States Supreme Court, or that the rulings were based on an

7    unreasonable determination of the facts in light of the evidence presented in the state court

8    proceeding.  The court denies habeas relief as to ground 3 of the amended petition.

9        **D.  Ground 4**

10        Petitioner alleges that: (a) trial counsel failed to object to the doctor's claims; (b) appellate

11    counsel failed to appeal the doctor's claims in that an expert witness could have enlightened the jury

12    that the medical term "bilateral brain bleed" is a broken nose; (c) trial counsel was ineffective

13    because he allowed highly prejudicial photographs of the victim to remain on the screen for 20

14    minutes or longer and appellate counsel was ineffective for not raising the issue on direct appeal;

15    and (d) trial counsel did not effectively cross-examine the victim to show that she was lying about

16    the ATM card and appellate counsel was ineffective for not raising the issue on direct appeal.  (ECF

17    No. 22, at pp. 23-25).  The Nevada Supreme Court considered and rejected petitioner's claims:

18            Seventh, appellant claimed that trial counsel failed to challenge the
            Dr. Schwartz stipulation as the jury was not provided a definition for a
19            bilateral brain bleed.  Appellant failed to demonstrate that his trial
            counsel's performance was deficient or that he was prejudiced.  A
20            stipulation necessarily indicates mutual agreement between the
            opposing parties, and thus, trial counsel would have not reason to
21            challenge the stipulation.  The emergency room doctor testified that a
            bilateral brain bleed was a life-threatening injury.  Appellant failed to
22            demonstrate that further testimony defining a bilateral brain bleed
            would have had a reasonable probability of altering the outcome at
23            trial. [Footnote 6: Contrary to appellant's assertion, nothing in the
            record would support his attempt to equate a bilateral brain bleed with
24            a broken nose.].

25    (Exhibit 67, at p. 5).

26            [A]ppellant claimed that appellate counsel should have challenged the
            doctor's testimony regarding a bilateral brain bleed.  Appellant failed
27            to demonstrate that counsel's performance was deficient or that he
            was prejudiced.  Appellant failed to identify what manner of argument
28            could have been raised to challenge the doctor's testimony and failed

1       to demonstrate that this issue would have had a reasonable probability of success on appeal.  Therefore, we conclude that the district court

2   did not err in denying this claim.

3       [A]ppellant claimed that appellate counsel should have argued that the court erred in admitting highly prejudicial photographs of the victim

4   and allowing the State to leave them on zoom for a long period of time.  Appellant failed to demonstrate that counsel's performance was

5   deficient or that he was prejudiced.  First, appellant did not identify the specific photographs.  Second, photographs of the victim's injuries

6   were probative and relevant to the charges.  Appellant failed to demonstrate that this issue would have had a reasonable likelihood of

7   success on appeal.

8       [A]ppellant claimed that appellate counsel should have argued that the court improperly admitted the victim's testimony about the ATM card

9   because it differed from her earlier statements to police.  Appellant failed to demonstrate that counsel's performance was deficient or that

10  he was prejudiced.  Even assuming that the victim made inconsistent statements, any inconsistencies would not make the testimony

11  inadmissible.

12  (Exhibit 67, at p. 9).  The state court's factual findings are presumed correct.  28 U.S.C. §

13  2254(e)(1).  As to each ineffective assistance of counsel claim within ground 4, petitioner has failed

14  to demonstrate that his trial counsel's performance was deficient or that he was prejudiced under

15  *Strickland*.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

16  rulings were contrary to, or involved an unreasonable application of, clearly established federal law,

17  as determined by the United States Supreme Court, or that the rulings were based on an

18  unreasonable determination of the facts in light of the evidence presented in the state court

19  proceeding.  The court denies habeas relief as to ground 4 of the amended petition.

20      **E.  Ground 5**

21      Petitioner claims violation of due process, equal protection, freedom of the press, and the

22  effective assistance of counsel because trial counsel failed to record critical proceedings and

23  appellate counsel failed to challenge the trial court's giving the victim a tissue to wipe her eyes in

24  front of the jury.  (ECF No. 22, at p. 27).  The Nevada Supreme Court rejected the claims regarding

25  the trial court's failure to record jury proceedings on direct appeal, as follows:

26      Patton claims that the district court committed reversible error when it did not comply with the jury-questioning procedures outlined in

27  Flores v. State, 114 Nev. 910, 965 P.2d 901 (1998), by not recording the jury-question admissibility hearing and by not permitting follow-

28  up questions by counsel.  Because Patton did not object below, we

review his claim for plain error.  See Valdez v. State, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008).  Although the district court did not strictly follow the Flores procedures, Patton has not shown that his substantial rights were affected, as he failed to explain any prejudice resulting from the lack of a recorded hearing or identify any follow-up question that he was not permitted to ask.  See Knipes v. State, 124 Nev. 927, 938, 192 P.3d 1178, 1185 (2008) (concluding that where defendant objected to a juror question, admissibility hearing should have been held on the record but that failure to do so was harmless error).

(Exhibit 39, at p. 2).  The Nevada Supreme Court also rejected petitioner's ineffective assistance of counsel claims on appeal from the denial of his state court habeas petition:

[A]ppellant claimed that trial counsel failed to object to the procedures used for the jury's questions.  Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced.  This court considered and rejected appellant's argument on direct appeal that the procedures were insufficient, determining that appellant failed to demonstrate that his substantial rights had been affected by the failure to correctly follow the procedures.  Patton v. State, Docket No. 54364 (Order of Affirmance, July 15, 2010).

(Exhibit 67, at p. 7).

As to petitioner's claim that appellate counsel failed to challenge the trial court's giving the victim a tissue to wipe her eyes in front of the jury, the Nevada Supreme Court ruled as follows:

Finally, appellant claimed that appellate counsel should have argued that the district court made a public display of sympathy for the victim when he offered the victim a tissue.  Appellant failed to demonstrate that this issue would have had a reasonable probability of success on appeal.  While the record indicates that the district court expressed concern at times, none of the expressions violated the duty of impartiality.

(Exhibit 67, at p. 11).  Even if the trial court committed an error of constitutional magnitude, such error is subject to this court's application of the *Brecht* harmless error rule, and petitioner is not entitled to federal habeas relief unless he demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict" under the independent harmless error standard of *Brecht v. Abramson*, 507 U.S. 619, 623 (1993).  Even assuming that the trial court erred, petitioner is not entitled to federal habeas relief because he has failed to demonstrate that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.  As such, the error was harmless. *Id.*  Petitioner has failed to meet his burden of

proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the United States Supreme Court, or

that the ruling was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  This court denies federal habeas relief on ground 5 in its

entirety.

**F.  Grounds 6 & 7**

There is considerable overlap in the claims petitioner makes in grounds 6 and 7 of the

amended petition.  (ECF No. 22, at pp. 29-37).  Therefore, the court considers grounds 6 and 7

together.

In ground 6, petitioner claims that his trial counsel was ineffective because he: (a) failed to

file kidnapping motions and failed to use *Wright v. State*, 581 P.2d 442, 443 (Nev. 1978) as a

defense; (b) failed to cross-examine witnesses; (c) showed no concern for petitioner because he was

black; and (d) failed to challenge the reasonable doubt instruction.  Petitioner also claims that

appellate counsel:  (a) failed to raise the issue of judicial coercion on appeal; (b) failed to challenge

the jury instruction on implied malice and violated NRS 47.2340; (c) failed to challenge the

stipulated fact of Richard Scwartz, M.D. to be part of the jury instruction; and (d) did not challenge

the constitutionality of jury instructions 11, 12, 13, 14, 15, 16, 17 and 18 and the jury instructions on

implied malice, premeditation, and deliberation.  (ECF No. 22, at pp. 29-30).

In ground 7, petitioner alleges that trial counsel was ineffective because he: (a) failed to

object to the premeditation and deliberation instruction; (b) failed to object to the admission of the

autopsy photographs and trace metal evidence and failed to present expert testimony opposing and

rebutting that evidence; (c) failed to interview and call to testify an essential alibi witness; (d) failed

to object to the prosecution's improper vouching and commentary during closing argument; (e)

failed to meaningfully investigate that petitioner was innocent of kidnapping; (f) different counsel

represented him at different hearings and were uninformed and unprepared to effectively represent

him; (g) failed to adequately cross-examine the victim; (h) failed to conduct a thorough pretrial

investigation; (i) failed to pursue and investigate his theory of the defense; (j) failed to cross-

examine witnesses about what petitioner said had happened; (k) failed to adequately prepare for

1   direct examination and cross-examination of witnesses; (l) failed to investigate and request or obtain

2   copies of the police department's lost notes and search reports; (m) failed to investigate by not filing

3   a request to obtain or review the autopsy and x-rays which contradict what the state alleged

4   petitioner did to the victim; (n) failed to obtain and review items removed from petitioner's

5   residence which could have shown that the victim had to get up to get her purse; (o) failed to object

6   to the statement that all three knives came from petitioner's residence when one knife came from the

7   victim's purse while she was at the hospital; and (p) failed to adequately present a defense theory

8   based on lesser included offenses such as false imprisonment or coercion.  Petitioner also argued

9   that: (a) the jury instructions on proximate cause and contributory negligence were invalid; (b)

10  allowing Dr. Schwartz's statement regarding a bilateral brain bleed as part of an instruction was

11  erroneous, as was the sympathy instruction.  Petitioner again alleged that the instruction on malice

12  was improper, violating NRS 47.230 and his due process rights.  (ECF No. 22, at pp. 32-35).

13        As discussed earlier in this order, the Nevada Supreme Court found that counsel challenged

14  the kidnapping charges, filed a motion to dismiss and a pretrial writ of habeas corpus, and

15  challenged the kidnapping count on direct appeal.  (*Supra*, Part III, B; Exhibit 67, at p. 2).

16  Petitioner fails to show which witnesses counsel failed to cross-examine and how this failure

17  prejudiced him.  In the discussion of ground 4, this court described how the Nevada Supreme Court

18  rejected petitioner's claim that counsel was ineffective for not challenging the Dr. Schwartz

19  stipulation because petitioner failed to demonstrate that further testimony defining a bilateral brain

20  bleed would have had a reasonable probability of altering the outcome at trial.  (*Supra*, Part III, D;

21  Exhibit 67, at p. 5).  The Nevada Supreme Court rejected petitioner's remaining arguments in

22  Grounds 6 and 7, as follows:

23                [A]ppellant claimed that trial counsel failed to challenge the
                  reasonable doubt jury instruction.  Appellant failed to demonstrate

24                that his trial counsel's performance was deficient or that he was
                  prejudiced as he received the instruction required by NRS 175.211.

25                [A]ppellant claimed that trial counsel failed to challenge jury
                  instructions 11-18.  Appellant provided no arguments that should have

26                been made regarding these instructions.  Thus, appellant failed to
                  demonstrate that his trial counsel's performance was deficient or that

27                he was prejudiced.

28

[A]ppellant claimed that trial counsel failed to object to prosecutorial misconduct during closing arguments. Appellant failed to identify which statements should have been objected to. Thus, appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced.

[A]ppellant claimed that trial counsel failed to investigate or request lost police notes or reports. Appellant failed to identify the lost police notes or provide an explanation for how counsel could have viewed notes or reports that had been lost. Thus, appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced.

[A]ppellant claimed that trial counsel failed to present lesser-included offenses of false imprisonment and coercion. Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced. First, appellant was originally charged in the justice court with coercion, but trial counsel successfully argued a motion to dismiss this count. Trial counsel presented a self-defense theory, which included a denial of any type of restraint of the victim. Appellant failed to demonstrate that there is a reasonable probability of a different outcome had trial counsel presented a theory of inconsistent with self-defense. [Footnote 7: The jury was instructed on the lesser offense of second-degree kidnapping.].

[A]ppellant claimed that trial counsel failed to object to the premeditation and deliberation jury instruction, failed to object to the implied malice jury instruction, failed to object to autopsy photographs, failed to object to trace metal evidence and present expert witness regarding such, and failed to interview and call an alibi witness. Appellant failed to demonstrate that his counsel was ineffective. It appears that these claims may have been borrowed from another inmate's petition and were inadvertently included in the instant case as none of these claims relate to appellant's case. This was not a murder case, none of the challenged instructions were given, no evidence regarding trace metal was presented, an alibi was not pursued in this case, and no autopsy photographs were presented.

[A]ppellant claimed that trial counsel failed to object to the district court's giving of an incomprehensible jury instruction on proximate case and an erroneous instruction on contributory negligence. No such instructions were given, and thus, appellant failed to demonstrate that his counsel's performance as deficient or that he was prejudiced.

[A]ppellant claimed that trial counsel should have objected to the district court's failure to provide an instruction on the State's loss of critical evidence collected at the hospital. Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced. Notably, appellant failed to identify the critical evidence lost at the hospital.

[A]ppellant claimed that trial counsel showed no concern for him because appellant is African American. Appellant offered no facts in support of this claim, and the record provides no support.

-18-

> Therefore, we conclude that the district court did not err in denying this claim.
>
> [A]ppellant claimed that appellate counsel should have presented an argument of judicial coercion. Appellant provided no facts or cogent argument relating to this claim. Therefore, we conclude that the district court did not err in denying this claim as he failed to demonstrate that he received ineffective assistance of appellate counsel.

(Exhibit 67, at pp. 5-8; pp. 10-11).

Regarding the reasonable doubt claim, trial counsel was not ineffective because the Ninth Circuit Court of Appeals upheld Nevada's reasonable doubt instruction in *Ramirez v. Hatcher*, 136 F.3d 1209, 1210-11 (9th Cir. 1998). Regarding the other claims in grounds 6 and 7, petitioner has provided no argument which his counsel should have made regarding the instructions, has failed to identify which fo the prosecutor's statements that counsel should have objected to, failed to identify the lost police notes or provide an explanation for how counsel could have viewed, advanced claims regarding a murder case that had nothing to with this case, failed to identify the critical evidence he claims was lost at the hospital, and has provided no facts or cogent argument to support his other claims.

The state court's factual findings, as found within the Nevada Supreme Court's rulings discussed above, are presumed correct. 28 U.S.C. § 2254(e)(1). This court has reviewed each of petitioner's claims within grounds 6 and 7. Petitioner has failed to demonstrate that his trial or appellate counsel's performance was deficient or that he was prejudiced under *Strickland*. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The court denies habeas relief as to all claims within grounds 6 and 7.

**G. Ground 9**

Petitioner alleges that counsel was ineffective because he failed to object, pursuant to *Flores v. State*, 114 Nev. 910, 965 P.2d 901 (1998), to the procedure that the trial court used to allow the jurors to ask questions. This claim was addressed in ground 5 of the amended petition. As

1   discussed earlier in this order, the Nevada Supreme Court rejected petitioner's ineffective assistance

2   of counsel claims regarding the *Flores* argument.  (*Supra*, Part III, E; Exhibit 67, at p. 7).

3          Petitioner also alleged that appellate counsel failed to timely seek a rehearing which stopped

4   his chances of proving his innocence.  (ECF No. 22, at pp. 37, 39).  The Nevada Supreme Court

5   rejected petitioner's claim as follows:

6          [A]ppellant claimed that appellate counsel should have filed a timely
           petition for rehearing.  Appellant failed to set forth any arguments that
7          should have been made in a petition for rehearing, and thus, he failed
           to demonstrate that his counsel was ineffective.

8

9   (Exhibit 67, at p. 11).  The state court's factual findings are presumed correct.  28 U.S.C. §

10   2254(e)(1).  Petitioner has failed to demonstrate that his counsel's performance was deficient and

11   has failed to show prejudice.  Petitioner has failed to meet his burden of proving that the Nevada

12   Supreme Court's rulings were contrary to, or involved an unreasonable application of, clearly

13   established federal law, as determined by the United States Supreme Court, or that the rulings were

14   based on an unreasonable determination of the facts in light of the evidence presented in the state

15   court proceeding.  The Court denies habeas relief as to ground 9 in its entirety.

16   **IV.  Certificate of Appealability**

17          District courts are required to rule on the certificate of appealability in the order disposing of

18   a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and

19   request for certificate of appealability to be filed.  Rule 11(a).  In order to proceed with his appeal,

20   petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th

21   Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v.*

22   *Mikels,* 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial

23   showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28

24   U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must

25   demonstrate that reasonable jurists would find the district court's assessment of the constitutional

26   claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold

27   inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of

28   reason; that a court could resolve the issues differently; or that the questions are adequate to deserve

encouragement to proceed further.  *Id.*  In this case, no reasonable jurist would find this court's denial of the petition debatable or wrong.  The court therefore denies petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the clerk of court **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated February 8, 2016.

UNITED STATES DISTRICT JUDGE